UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                   :

HAO ZHE WANG,                    :

                                   :

                     Plaintiff,    :

                                   :          23-CV-4508 (VSB)

            - against -       :

                                   :       **OPINION & ORDER**

BANK OF AMERICA CORPORATION,   :
*et al.*,                        :

                                   :

                    Defendants.  :

                                   :
--------------------------------------------------------X

<u>Appearances</u>:

Hao Zhe Wang
New York, NY
Pro se *Plaintiff*

Michael Edmund Blaine
Carol Ann DiPrinzio
Winston & Strawn LLP
New York, NY
*Counsel for Defendant Bank of America Corporation*

Brian S. McGrath
Hinshaw & Culbertson LLP
New York, NY
*Counsel for Defendant Specialized Loan Servicing LLC*

<u>VERNON S. BRODERICK, United States District Judge</u>:

        Plaintiff, proceeding *pro se*, asserts various claims in connection with (1) a failed attempt

to refinance one of his mortgages with Defendant Bank of America Corporation ("BofA"),

(2) BofA's subsequent transfer of the servicing of Plaintiff's mortgage to Defendant Specialized

Loan Servicing LLC ("SLS"), and (3) SLS's subsequent rebrand and servicing of Plaintiff's

mortgage.  BofA and SLS move to dismiss Plaintiff's claims, and Plaintiff moves to amend his

complaint.  Plaintiff does not plausibly allege that BofA committed a fraud in connection with his refinancing application, breached a contract, or violated the Fair Credit Reporting Act. Plaintiff does, however, plausibly allege that BofA and SLS violated § 349 of New York's unfair-business-practices statute, and that SLS violated the Federal Debt Collection Practices Act. Thus, and for the reasons that follow, BofA's motion to dismiss is GRANTED IN PART and DENIED IN PART, and SLS's motion to dismiss is DENIED.  Further, Plaintiff's motion for leave to amend his complaint is GRANTED.

## I.    <u>Factual Background</u>[1]

### A.  *Wang's Unsuccessful Refinancing with Defendant BofA*

Plaintiff Hao Zhe Wang ("Wang") owns various properties.  (*See* Doc. 11 ("Am. Compl.") ¶¶ 5–7.)[2]  In "early 2019," Wang obtained a mortgage on one of his properties with Defendant Bank of America Corporation ("BofA" or the "Bank"), working primarily with BofA's employee Alan Kreit, who is not a party to this action.  (*Id.* ¶ 7.)  In December 2021, Wang decided to ask Kreit if BofA would refinance his mortgage.  (*Id.* ¶¶ 5, 7.)  Wang had previously started to refinance a separate mortgage with a competitor of BofA, and the competitor solicited Wang's business in refinancing his BofA mortgage as well.  (*See id.* ¶¶ 5–7.) Kreit told Wang that BofA would match the competitor's refinancing rates, and on December 24,

---

[1] Unless otherwise noted, I draw the factual background from Plaintiff's state-court complaint, (Doc. 1-1), his first amended complaint, (Doc. 11), and his proposed second amended complaint, (Doc. 29-1).  *See Smith v. City of N.Y.*, No. 18-CV-33, 2020 WL 1689752, at *1 (S.D.N.Y. Apr. 6, 2020) ("Consistent with the duty to liberally construe *pro se* pleadings, a court considering a motion to dismiss a *pro se* complaint may also consider and credit allegations advanced in opposition papers and other filings.").  I assume the truth of these facts for the purposes of deciding the present motions, but I make no factual findings, and nothing in this Opinion & Order should be construed as such.

[2] References to paragraph numbers in the Amended Complaint are to the document titled "Attachment to Complaint."  (Doc. 11 at 8-13.)

2021, Wang "agreed to start a refinancing application for the [BofA] mortgage with [BofA]." (*Id.* ¶ 7.)

Over the next four months, Wang and BofA worked to finalize the mortgage refinancing. On January 25, 2022, BofA asked Wang to submit additional paperwork for the refinancing. (Am. Compl. ¶ 8.)  Wang submitted IRS forms to BofA in "early February," and a Bank employee asked Wang to explain why information about certain property maintenance expenses were missing from the forms.  (*Id.* ¶¶ 9–10.)  Wang told the employee that "the IRS transcription was likely in error."  (*Id.* ¶ 10.)

Meanwhile, Wang had been working with the competitor on the other refinancing, which "closed in late February 2022."  (Am. Compl. ¶ 11.)  The competitor lender did not ask Wang about the missing maintenance expenses on his IRS forms.  (*Id.* ¶ 9.)

In "early March" 2022, "mortgage rates started to climb," but Wang had not made progress with BofA on closing the refinancing.  (Am. Compl. ¶ 12.)  Kreit promised Wang that BofA would honor the original quoted refinancing rate if the refinancing closed by "the end of March."  (*Id.* ¶ 14.)  A BofA employee told Wang on March 9, 2022 that "the only thing holding up the underwriting process was the discrepancy between Plaintiff's retained copy of his tax return and the tax transcript that Plaintiff authorized [BofA] to obtain" from the IRS.  (*Id.* ¶ 15.) Wang told BofA that an IRS representative told him that BofA could obtain more complete tax documentation by submitting a certain form, but BofA never told Wang that it submitted the form.  (*Id.*)  Additionally, Kreit told Wang that BofA's underwriters could use Wang's prior-year tax information rather than the current-year forms with the missing expense information.  (*Id.* ¶ 16; *see also* Doc. 25 ("Opp'n") 8–9.)  Ultimately, however, in mid-April 2022, BofA told Wang that it would not refinance his mortgage.  (Am. Compl. ¶ 17.)  Wang asserts that but for Kreit and

the Bank's reassurances, he would have refinanced with the competitor lender rather than wait for BofA to process his refinancing application.  (*See id.* ¶¶ 1, 18.)

### B.  *Defendant SLS' Servicing of Wang's Mortgage*

In February 2023, BofA told Wang that Defendant Specialized Loan Servicing LLC ("SLS") was taking over the "loan service" for his mortgage.  (Am. Compl. ¶ 19.)  On March 22, 2023, Plaintiff received communications dated earlier that month from SLS "introducing itself as the new firm handling Plaintiff's [BofA] loan" and directing Plaintiff to contact an SLS representative named "Tracy" by phone.  (*Id.* ¶ 20.)  When Wang called Tracy's phone number, he was "greeted by a machine that described SLS as a debt collector."  (*Id.* ¶ 21.)  The "machine" gave Wang information to set up an SLS account online; he set up his account shortly thereafter. (*Id.* ¶¶ 21–22.)  Plaintiff's SLS account showed a past due balance higher than his usual monthly BofA balance, including an additional charge of approximately $800 that Plaintiff did not recognize.  (*Id.* ¶¶ 23–24.)  Wang nonetheless paid his balance in full, and filed a written dispute with SLS regarding the amounts on his bill.  (*Id.* ¶ 25.)  SLS acknowledged receipt of the dispute, but never responded to its substance, and "continued to deduct payments from Plaintiff's checking account."  (*Id.* ¶ 26.)  Wang alleges that he has timely paid the full amount of his mortgage bill throughout the relevant time period.  (*See id.*; *see also* Opp'n 6.)

Wang alleges that when he "disagreed with the amount due, BofA reported his loan as delinquent."  (Am. Compl. ¶ 30.)  Wang therefore "wrote to the credit reporting agencies to report that [he] had in fact kept up payments that were rightfully due to BofA."  (*Id.* ¶ 30.)  In accordance with the Fair Credit Reporting Act, the reporting agencies forwarded Wang's dispute to BofA; BofA then sent Wang a "boilerplate form" investigation letter requesting that Wang "take steps to document that his identity had been stolen."  (*Id.* ¶¶ 30–31.)  Wang did not respond

to this letter, which he describes as a "phony investigation of a made-up identity theft case," and thereafter "BofA summarily reaffirmed the debt with the credit reporting agencies." (*Id.* ¶ 32.)

In May 2024, SLS emailed Wang that it had rebranded to "Newrez LLC dba Shellpoint Mortgage Servicing" ("Shellpoint"), but that his SLS login credentials would remain the same. (Doc. 29-1 ("Second Am. Compl.") ¶ 40.) The next month, Shellpoint emailed Wang that "it had no record of Plaintiff's monthly payments," even though deductions continued to be made from Wang's checking account every month. (*Id.* ¶¶ 41, 44.) Wang was unable to speak with anyone at Shellpoint about this purported discrepancy, and Shellpoint eventually reported past-due payments to the credit bureaus. (*Id.* ¶¶ 46–50.) Despite Wang disputing the past-due payments, the bureaus "verified or authenticated" Shellpoint's reports. (*Id.* ¶ 51.)

## II.    **Procedural History**

Wang, proceeding *pro se*, initiated this action on February 28, 2023 by filing a complaint against BofA in New York Supreme Court, New York County. (*See* Doc. 1-1 ("Compl.").) On May 30, 2023, BofA removed the action to this Court on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1332. (*See* Doc. 1.) BofA filed a motion to dismiss on June 6, 2023. (*See* Doc. 5.) Rather than respond to BofA's motion, Wang filed an amended complaint on July 28, 2023, asserting claims against Defendants BofA and SLS. (*See* Doc. 11 ("Amended Complaint" or "Am. Compl.").)[3] On September 8, 2023, BofA filed a motion to dismiss Plaintiff's amended complaint, (Doc. 18), along with a supporting memorandum of law, (Doc. 18-1 ("BofA MTD")). On October 24, 2023, SLS filed a motion to dismiss, (Doc. 22), and a supporting memorandum of law, (Doc. 23 ("SLS MTD")). Plaintiff filed a brief in opposition to the motions on November

---

[3] Wang's filing of an amended complaint mooted BofA's June 6, 2023 motion to dismiss. (Doc. 30.)

14, 2023.  (Doc. 23 ("Opp'n")).  BofA filed a reply in support of its motion to dismiss on

November 28, 2023.  (Doc. 28 ("BofA Reply").)  SLS did not file a reply.

On January 19, 2025, Plaintiff filed a motion for leave to file a second amended

complaint, (Doc. 29), including a proposed second amended complaint regarding events

subsequent to the filing of his Amended Complaint, (Doc. 29-1 ("Second Am. Compl.")).

I first address Defendants' motions to dismiss, then Wang's motion to amend.

### III.    <u>Motions to Dismiss</u>

#### A.  *Legal Standard*

"A motion to dismiss is designed to test the legal sufficiency of the complaint."  *De Jesus

v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (internal quotation marks omitted).  To

survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  The court takes the facts in the complaint as true, draws all reasonable inferences in the

plaintiff's favor, and ignores any "legal conclusions" among the factual allegations.  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is proper when "the allegations in a complaint,

however true, could not raise a claim of entitlement to relief" as a matter of law.  *Twombly*, 550

U.S. at 558.

Further, "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  Fed R. Civ. P. 9(b).  The allegations must

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir.

2013) (internal quotation marks omitted).  Although "[m]alice, intent, knowledge, and other

conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "a plaintiff must

still 'allege facts that give rise to a strong inference of fraudulent intent,'" *Carolina Cas. Ins. v.*

*Cap. Trucking, Inc.*, 523 F. Supp. 3d 661, 679 (S.D.N.Y. 2021) (internal quotation marks

omitted).

Finally, notwithstanding this "plausibility standard," *Iqbal*, 556 U.S. at 678, a court

"remain[s] obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009). In other words, "a *pro se* complaint must be held to less stringent standards than

formal pleadings drafted by lawyers." *Smith v. City of N.Y.*, No. 18-CV-33, 2020 WL 1689752,

at *1 (S.D.N.Y. Apr. 6, 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation

modified)). "While the pleadings of a *pro se* plaintiff must be construed liberally, a *pro se*

complaint must still meet the particularity requirements of Rule 9(b) [of the Federal Rules of

Civil Procedure]." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 241 (S.D.N.Y. 2013) (citing

*Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 310–11 (S.D.N.Y. 2003)).

### B. *Discussion*

Wang's Amended Complaint asserts three categories of claims. In connection with

BofA's "underwriting process" of his refinancing application, Wang asserts the following causes

of action against BofA: (1) common-law fraudulent misrepresentation; (2) common-law

promissory fraud; and (3) unfair and deceptive business practices in violation of New York's

General Business Law ("GBL"). (Am. Compl. ¶¶ 1, 34.) In connection with BofA's

"delegat[ion of] debt collection on Plaintiff's mortgage account to SLS," Wang asserts claims for

(1) common-law breach of contract, (2) "deceptive business practice" under the GBL against

BofA and SLS, (*id.* ¶¶ 2, 35), (3) violation of the Federal Debt Collection Practices Act against

SLS, (*id*. ¶¶ 3, 37), and (4) a claim for a violation of the Federal Credit Reporting Act against BofA, (*id*. ¶¶ 4, 38).

As a preliminary matter, Defendant BofA asserts that it is "a publicly traded holding company that does not transact business with consumers such as Plaintiff," and that therefore it "is not a proper party to this lawsuit." (BofA MTD 3.) As Plaintiff correctly points out, a "motion to dismiss is not the right vehicle" for BofA to litigate this contention, (Opp'n 2), because I must assume the truth of Plaintiff's factual allegations in deciding if they plausibly state a claim, *see Iqbal*, 556 U.S. at 678.

### 1. Claims Related to Refinancing Application

Wang fails to state a claim against BofA for fraudulent misrepresentation, promissory fraud, and unfair or deceptive business practices under the GBL in connection with his unsuccessful refinancing application at the Bank. Each of these claims requires that Plaintiff allege that BofA or its agent made an actionably false or misleading statement. *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009) ("The elements of a cause of action for fraud require [*inter alia*] a material misrepresentation of a fact."); *eCommission Sols., LLC v. CTS Holdings, Inc.*, No. 15-CV-2671, 2017 WL 985881, at *5 (S.D.N.Y. Mar. 13, 2017) ("To state a claim for promissory fraud under New York law, 'a plaintiff must allege [*inter alia*] that . . . the defendant made a material false representation.'" (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995))); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995) (explaining that a "prima facie" claim under General Business Law § 349 "requires . . . a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way").

None of the purportedly false statements alleged by Wang were actionably false.  First, BofA's "promise[] to extend a rate lock for free" was, by its terms, meant to "expire[]" "[a]t the end of March."  (Am. Compl. ¶¶ 13–14.)  It is undisputed that Wang had not closed the refinancing at the end of March, so BofA did not break this promise.  Second, it was not false that the issue with Wang's IRS form was "the only thing holding up the underwriting process"— rather, Plaintiff's allegations indicate that BofA declined to refinance the mortgage because of the form issue.  (*Id*. ¶¶ 15, 17.)  The fact that BofA's competitor on another refinancing with Wang "closed in late February 2022," (Am. Compl. ¶ 11), without asking Wang about the missing maintenance expenses on his IRS forms, (*id*. ¶ 9), does not make the statement that Wang's IRS form was "the only thing holding up the underwriting process" at BofA—a separate lender—false.  Finally, although Wang alleges that "Kreit told [him] that the underwriters could disregard the 2020 return [with the maintenance-expense discrepancy] and rely instead on [Wang's] 2019 tax return," (*id*. ¶ 16), there are no allegations that the underwriters independently stated they would disregard Wang's 2020 tax return, or that Kreit controlled the underwriters.  Therefore, the statement was "not an actionable misrepresentation of an existing fact, but rather one of a possible future contingency, which required the consideration of many factors before it occurred."  *eCommission*, 2017 WL 985881, at *6 (internal quotation marks omitted).  Moreover, as a practical matter, if Kreit could guarantee Wang's refinancing without the underwriting, BofA's underwriting process would be rendered superfluous.  In addition, the Amended Complaint does not contain any allegations that BofA improperly prevented Wang from pursuing refinancing with the competitor lender that ultimately approved the refinancing of his other mortgage.  For these reasons, Wang's claims related to the refinancing fail.

## 2.  Claims Related to Mortgage Payments

Wang also brings breach-of-contract and unfair-business-practices claims related to BofA and SLS's handling of his mortgage payments following February 2023.  (*See* Am. Compl. ¶¶ 19–32.)  Wang alleges that when BofA reassigned his mortgage account to SLS, either SLS or BofA changed the terms of the mortgage so that his monthly payments were higher, and charged him unjustified late fees at a higher amount than was stated in his mortgage contract.  (*See id*.)

### a.  Breach of Contract

To state a breach-of-contract claim, "[a] plaintiff must plead the provisions of the contract upon which the claim is based—in other words, a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated."  *Abadi v. Am. Airlines, Inc.*, No. 23-CV-4033, 2024 WL 1346437, at *45 (S.D.N.Y. Mar. 29, 2024) (internal quotation marks omitted).  Wang states that the relevant contract is "the loan agreement with BofA," which "provides for a 30-year fixed rate of 4.875% and a fee schedule [that] includes a late charge of no more than $40."  (Opp'n 7.)[4]  Accordingly, Wang argues that the $210 late fee and the "mysterious 'charge' of $844.33" violate the loan agreement, since "[n]either number can be divided by 40."  (*Id*.)  Because, however, Wang has declined to submit the entire loan agreement and fee schedule or provide further details regarding his payment history—and keeping in mind Wang's allegation that SLS calls itself a "debt collector," (Am. Compl. ¶ 21)—it is impossible for me to discern whether the fees that BofA and/or SLS charged breach "the specific terms of the contract," *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015) (internal quotation

---

[4] I may consider this allegation in deciding the motions to dismiss because Wang is proceeding *pro se*.  *See Smith*, 2020 WL 1689752, at *1.

marks omitted).  Wang therefore fails to state a breach-of-contract claim against BofA or SLS.  I

will, however, grant Plaintiff leave to replead this claim to furnish this information.

b.  General Business Law

Next, to state an unfair-or-deceptive-practices claim under the General Business Law,

Wang "must charge conduct of the defendant that is consumer-oriented."  *Oswego*, 647 N.E.2d at

744.  This means "something more than a single-shot consumer transaction or a contract dispute

unique to the parties."  *Phifer v. Home Savers Consulting Corp.*, No. 06-CV-3841, 2007 WL

295605, at *5 (E.D.N.Y. Jan. 30, 2007) (citing *Teller v. Bill Hayes, Ltd.,* 213 A.D.2d 141, 147–48

(2d Dep't 1995)).  "While the claim need not allege recurring conduct, to prevail the plaintiff

'must demonstrate that the acts or practices have a broader impact on consumers at large.'"

*Phifer*, 2007 WL 295605, at *5 (quoting *Oswego*, 647 N.E.2d at 744).  "Private contract disputes,

unique to the parties," generally do "not fall within the ambit of the statute."  *Oswego*, 647

N.E.2d at 744 (citation omitted).  That said, when "a bank customer receiv[es] [] standard forms

and advice supplied to the consuming public at large, and [where] the parties occup[y] disparate

bargaining positions," a contract dispute may become consumer-oriented within the meaning of

the statute.  *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995) (hereinafter

"*NYU*").  In addition to the consumer-oriented requirement, to state a claim under the GBL, a

plaintiff must make "a showing that [the] defendant is engaging in an act or practice that is

deceptive or misleading in a material way and that plaintiff has been injured by reason thereof."

*Oswego*, 647 N.E.2d at 744.  This "practice 'need not reach the level of common-law fraud,'

. . . and claims brought pursuant to [§ 349 of the GBL] are not subject to the particularity

requirements of Rule 9(b)."  *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 561–62

(S.D.N.Y. 2016) (quoting *Stutman v. Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000), and

citing *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).

　　　Here, construing Wang's *pro se* allegations liberally, he states a claim that BofA and

SLS's actions in "add[ing] fees and charges to customers' online payment portal that were not

reflected or accounted for in the statements that the customers received," (Am. Compl. ¶ 35),

violated § 349 of the GBL.  From Wang's reference to BofA and SLS's "customers," (*id*.), I may

"infer" he alleges that Defendants' actions are a "standard practice," *Phifer*, 2007 WL 295605, at

*5.  This inference is supported by the "'modest' nature of the transaction" in comparison to

larger commercial contracts courts have found not to be consumer-oriented, as well as the

"relative bargaining power" between Wang, a consumer, and BofA, a large and sophisticated

company.  *Interested Underwriters at Lloyd's of Lond. v. Church Loans & Invs. Tr.*, 432 F. Supp.

2d 330, 333 (S.D.N.Y. 2006) (quoting *NYU*, 662 N.E.2d at 771); *see also id*. ("New York courts

have identified at least three factors relevant in the consumer-orientation analysis: (1) the amount

of money involved in the agreement; (2) the relative bargaining power and sophistication of the

parties; and (3) the nature of the agreement.").  Additionally, Plaintiff plausibly alleges that

Defendants' practices of, among other things, charging higher fees than set forth in "the agreed-

upon fee schedules" and not crediting timely payments, (Am. Compl. ¶ 35), were materially

"deceptive" in that they caused Plaintiff to pay more than he agreed to when originally signing

the mortgage, *see, e.g.*, *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)

("Allegations of a bank's unilateral imposition of illegal and/or unwarranted fees upon its

customers state a valid claim under § 349." (quoting *Negrin v. Norwest Mortg., Inc.*, 263 A.D.2d

39, 50 (2d Dep't 1999) (alteration adopted)); *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F.

Supp. 3d 136, 168 (E.D.N.Y. 2024) (explaining that plaintiff stated a claim under the GBL where

a bank allegedly misrepresented that it was permitted to impose a fee). Thus, Defendants'

motions to dismiss Plaintiff's claim under the General Business Law regarding Defendants'

handling of Plaintiff's mortgage payments following February 2023 are DENIED.

### 3. Federal Debt Collection Practices Act

"Congress enacted the [Federal Debt Collection Practices Act ("FDCPA")] to eliminate

abusive practices in the debt collection industry, and to ensure that 'those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Ellis*

*v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010) (quoting 15 U.S.C. § 1692(e))

(citation modified). The statute prohibits "'debt collectors' from making false or misleading

representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*,

514 U.S. 291, 292 (1995).

To state a claim for a violation of the FDCPA, a plaintiff must plausibly allege: (1) the

plaintiff is a "consumer"; (2) the defendant is a "debt collector"; and (3) the defendant

"committed some act or omission in violation of the FDCPA." *Wise v. JPMorgan Chase*, No. 21-

CV-3718, 2023 WL 5575889, at *3 (S.D.N.Y. Aug. 29, 2023) (citing *Okyere v. Palisades*

*Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013)). SLS does not dispute that Plaintiff

is a consumer, but argues that he has not established that SLS is a "debt collector" or that SLS

committed an act in violation of the statute. (SLS MTD 9–12.)

Under the FDPCA, a "'debt collector' is a person 'who regularly collects . . . debts

owed . . . another' or a person involved 'in any business the principal purpose of which is the

collection of any debts.'" *Wise*, 2023 WL 5575889, at *3 (quoting 15 U.S.C. § 1692a(6)). The

Supreme Court has explained that this definition encompasses "third party collection agents

working for a debt owner—[but] not . . . a debt owner seeking to collect debts for itself."

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017); *see also id*. at 86 (explaining that an entity "might, for example, take possession of a debt for servicing and collection even while the debt formally remains owed another").  Additionally, the statute "exempts from the definition of 'debt collector' . . . individuals who have 'obtained' . . . debts not yet in default." *Id*. at 86 (citing 15 U.S.C. § 1692a(6)(F)(iii)); *see also Alibrandi v. Fin. Outsourcing Services, Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) ("In applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." (footnote omitted)).

The allegations in the Amended Complaint do not clearly detail SLS's role in handling the mortgage, but I conclude Wang has plausibly alleged that SLS is a "debt collector" within the meaning of the FDCPA.  Wang alleges that SLS "described" itself as a "debt collector" in an automated telephone answering service.  (Am. Compl. ¶ 21.)  Wang also characterizes his payments to SLS as "payments that SLS was collecting for the BofA loan."  (*Id*. ¶ 25.)  These allegations are sufficient to plausibly plead that SLS was a "third party collection agent[] working for a debt owner," BofA, and therefore a "debt collector" under the statute.  *Henson*, 582 U.S. at 83.  Although Plaintiff's allegations might be read to suggest that he believed he was not in default because he "had in fact kept up payments that were rightfully due to BofA," (Am. Compl. ¶ 30), SLS's "self-identification as a debt collector constituted a declaration" that Wang's "debt was in default," and that therefore SLS did not fit the FDCPA's pre-default exclusion, *Alibrandi*, 333 F.3d at 88.  Contrary to SLS's arguments, (*see* SLS MTD 11), dismissal is not warranted on this ground.

I next examine whether the Amended Complaint alleges that SLS "committed some act or omission in violation of the FDCPA."  *Wise*, 2023 WL 5575889, at *3.

First, Wang alleges that SLS "provided . . . no meaningful way to dispute SLS's own billing practices and fees." (Am. Compl. ¶ 3.)  This claim appears to be based on Wang's allegation that after he submitted a timely written dispute to SLS, the company "acknowledged [its] receipt of [the] dispute letter and promised to respond," but the "promised response never arrived." (*Id*. ¶ 26.)  The relevant provision of the FDCPA provides that "[i]f the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt." 15 U.S.C. § 1692g(b); *see also Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013) ("Section 1692g(b) thus confers on consumers the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." (quoting *Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998)). Plaintiff's allegations that SLS continued to collect on his mortgage debt without responding to Wang's written dispute therefore state a claim for a violation of § 1692g(b). While SLS argues that Plaintiff's allegations that SLS continued to collect "must surely be carved out from the 'disputed portions' of the debt," (Opp'n 12), to the contrary, the allegations in the Amended Complaint state that "the charges and payments that SLS was collecting for the BofA loan [were] much higher than the BofA figure that Plaintiff was already disputing," (Am. Compl. ¶ 25).  In other words, Plaintiff's allegations are that SLS continued to collect the entire amount it claims despite Plaintiff's unanswered dispute letter.  This violates the plain language of § 1692g(b).

Relatedly, Wang alleges that SLS "neglected its FDCPA duties to investigate and authenticate the debt." (Am. Compl. ¶ 3; *see also id*. ¶ 37 (asserting that SLS's "apparent failure to verify the legitimacy and amount of a debt that it has collected on behalf of BofA" violated the FDCPA).)  A plaintiff states a claim under § 1692g(b) for inadequate debt verification by

plausibly alleging that following the plaintiff's dispute, the defendant "failed to confirm in writing the amount of the Debt and the identity of the creditor." *Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 502 (E.D.N.Y. 2015) (citation omitted). As discussed, Wang alleges that SLS did not respond to his written dispute letter. (*See* Am. Compl. ¶¶ 3, 26.) Thus, his allegations sufficiently state an inadequate-debt-verification claim as well.

In response, SLS argues that "Plaintiff fails to allege he ever received a 'notice of debt' as set forth in [15 U.S.C.] § 1692g(a)," so "the thirty-day period during which Plaintiff can pause collection by disputing the debt" pursuant to § 1692g(b) "never started." (SLS MTD 11.) It is true that subsection (a) of the statute provides that a debt collector must send a "written notice" to the consumer with certain disclosures "[w]ithin five days after the [debt collector's] initial communication with a consumer." 15 U.S.C. § 1692g(a). One of the required disclosures is "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." *Id*. § 1692g(a)(3). A debt collector's failure to send such an adequate disclosure constitutes a separate violation of § 1692g(a). *See, e.g.*, *Bryan v. Credit Control, LLC*, 954 F.3d 576, 581 (2d Cir. 2020). However, as SLS admits, (SLS MTD 11), Plaintiff does not claim that SLS ever made a § 1692g(a) disclosure. Rather, Wang's claim is that SLS continued to collect on his debt after his dispute and failed to verify the debt. Since SLS's communication dated March 9, 2023 was "in connection with [Wang's] debt," the latest possible date that the thirty-day dispute period could have started was "five days" later, on March 14, 2023. 15 U.S.C. § 1692g(a). Wang alleges he sent his written dispute to SLS on March 22, 2023. (*See* Am. Compl. ¶¶ 20–25.) Thus, Wang's dispute letter must have fallen within § 1692g's thirty-day dispute period. Further, if SLS's position were the law, a debt collector could avoid § 1692g(b)

liability by failing its disclosure obligations under § 1692g(a).  SLS cites no authority for this proposition.

Finally, Wang alleges that SLS "used its own delays" in delivering Wang's billing statements "to assess debtors late fees . . . in excess of the original creditor's fee schedules." (Am. Compl. ¶ 3.)  The FDCPA supports liability for charging a fee "unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1); other provisions of the law, *id*, §§ 1692e(2), 1692f(1), prohibit debt collectors from falsely representing the amount of a debt that is owed.  *See Francis v. Gen. Revenue Corp.*, No. 18-CV-6955, 2020 WL 4586392, at *2–3 (E.D.N.Y. Aug. 10, 2020) (evaluating claim based on excess late fees at summary judgment).  I have already permitted Wang to maintain a claim against SLS based on his allegations that SLS charged him fees in excess of his mortgage agreement.  *See supra* § III.B.2.b.  These allegations also support an FDCPA claim against SLS.

The motion to dismiss Wang's FDCPA claims is DENIED.

### 4.  Fair Credit Reporting Act

The Fair Credit Reporting Act ("FCRA") imposes duties on entities such that "furnish" information to consumer credit reporting agencies.  *See* 15 U.S.C. § 1681s-2.[5]  A private cause of action is available under § 1681s-2(b) to enforce a furnisher's duty "to 'conduct an investigation with respect to [] disputed information,' after receiving notice from a consumer reporting agency" of a consumer's credit-report dispute.  *Lewis v. Navy*, No. 21-CV-9131, 2022 WL

---

[5] Although I agree with BofA that Plaintiff's FCRA claim fails, BofA's briefing on this claim misses the mark.  In moving to dismiss Wang's Amended Complaint, BofA cites precedent relevant to the FCRA provision that applies to credit reporting agencies, not furnishers such as BofA.  (*See* BofA MTD 10–11.)  Additionally, on reply, (BofA Reply 5), BofA cites *Sessa v. Linear Motors, LLC*, for the categorical proposition that "in the FCRA context . . . [a] claimed inaccuracy must be factual, not legal." 576 F. Supp. 3d 1, 10–11 (S.D.N.Y. Dec. 20, 2021) (internal quotation marks omitted).  However, that case was not good law when BofA submitted its reply brief, since months before the filing date, the Second Circuit disagreed with the district court's "bright-line rule" and therefore vacated and remanded.  *See Sessa v. Trans Union, LLC*, 74 F.4th 38 (2d Cir. 2023).

329195, at *2 (S.D.N.Y. Feb. 2, 2022) (quoting 15 U.S.C. § 1681s-2(b)(1)); *see also Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 99 (2d Cir. 2020).  To state a § 1681s-2(b) claim, "a consumer must show that (1) a furnisher received notice of a credit dispute from a credit reporting agency (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation."  *Lewis*, 2022 WL 329195, at *2 (internal quotation marks omitted and alteration adopted).

The factual premise of Wang's claim begins with his allegations that even though he paid the "unreasonable" and "inexplicable" extra charges that SLS applied to his BofA loan in March 2023, (Am. Compl. ¶ 29), and even though he has timely paid the full amount of his mortgage bill every month, (*see id.* ¶¶ 25–26), "BofA reported his loan as delinquent" to the credit reporting agencies after Wang "disagreed with the amount due," (*id.* ¶ 30).  Wang therefore "disputed the delinquency status" with the agencies, "describ[ing] the dispute with BofA as one about the payment amounts."  (*Id.*)  As part of BofA's investigation, it sent a letter to Wang which "included a boilerplate form asking [him] to take steps to document his identity had been stolen."  (*Id.* ¶ 31.)  Wang's claim asserts that BofA's investigation was unreasonable under the FCRA because BofA's letter suggested it was investigating identity theft "instead of addressing the dispute at the heart of Plaintiff's request for investigation."  (*Id.* ¶ 32.)  Wang asserts that this purported deficiency was "because [BofA's] agents were carelessly and negligently trained to handle only identity theft cases in FCRA disputes or perhaps because it had no intention of conducting a real investigation in [Wang's] case."  (*Id.*)

While Plaintiff plausibly alleges that BofA is furnisher under the statute and that it received notice of Wang's credit dispute from a reporting agency, (Am. Compl. ¶¶ 29–30, 38), the FCRA claim fails because Wang does not plausibly allege that BofA failed to conduct a

reasonable investigation. "The reasonableness of a furnisher's investigation depends upon the nature and scope of the consumer's dispute to the [reporting agency]." *Napoleon v. 5665 Sunrise Highway Corp.*, No. 18-CV-5703, 2021 WL 3469991, at *9 (E.D.N.Y. July 7, 2021) (internal quotation marks omitted); *see also id.* (collecting cases). "[C]ourts look to 'whether the furnisher's procedures were reasonable in light of what is learned about the nature of the dispute from the description in the [reporting agency]'s notice of dispute." *Id.* (quoting *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 27 (1st Cir. 2010)) (citation modified). "For example, 'where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted.'" *Id.* (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014)). A furnisher's investigation may be unreasonable if, for instance, it spends "a minimal amount of time" investigating a claim or it applies "a plainly erroneous interpretation of [its] legal obligations." *Seamans*, 744 F.3d at 866.

Here, Wang's only allegation suggesting that BofA's investigation was unreasonable was that its investigatory letter suggested that Wang might have been a victim of identity theft. BofA's response was not unreasonable given that mistaken identity is a common reason a credit report might include inaccurate information. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432–33 (2021). Further, Wang admits that he did not respond to BofA's letter because he did not want to "play along in [BofA's] phony investigation of a made-up identity theft case." (Am. Compl. ¶ 32.) It is therefore not surprising that BofA's investigation determined that its report of Wang's "debt" was accurate, (*id.* ¶ 32)—Wang does not allege that BofA received anything to the contrary. Instead, his "allegations are consistent with [BofA] having reviewed his account and billing history and confirmed that the factual information, while disputed, was nonetheless accurate." *Chiang*, 595 F.3d at 40. These allegations are not sufficient to state a

claim under the FCRA.  *Cf. DeSiena v. Pennsylvania Higher Educ. Assistance Agency*, No. 22-1956, 2023 WL 4044109, at *2 (2d Cir. June 16, 2023) ("At bottom, DeSiena's argument reduces to the untenable claim that 'any investigation that did not accept her allegations as accurate was by definition unreasonable.'" (quoting *Chiang*, 595 F.3d at 41)).

IV.    <u>**Motion to Amend**</u>

A.  *Legal Standard*

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading with leave of the court; the Rule dictates that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a); *see also Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "But courts have 'discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  *Feltenstein v. 45 S. Main St., Corp.*, No. 18-CV-4929, 2019 WL 2173967, at *1 (S.D.N.Y. May 20, 2019) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

B.  *Discussion*

Plaintiff moved to file a second amended complaint on January 19, 2025.  (*See* Doc. 29.) The proposed amended complaint adds factual allegations as to SLS's conduct following May 1, 2024, including SLS's rebranding, its purported inaccurate recording of Wang's payments as delinquent, and its failure to investigate Wang's disputes filed with the major credit bureaus. (*See* Doc. 29-1 ¶¶ 40–56.)  Neither Defendant filed an opposition to Plaintiff's motion to amend. I find that none of the reasons to deny amendment are present here—Plaintiff may well state additional claims against SLS based on his new factual allegations.

Plaintiff's proposed amended complaint does not contain new factual allegations related to BofA.  (*See* Doc. 29-1 ¶¶ 40–56.)  Plaintiff is, however, granted leave to amend in order to furnish the information missing from his breach-of-contract claim against BofA.  *See supra* § III.B.2.a.

Leave to amend is therefore GRANTED.

### V.    <u>Conclusion</u>

For the foregoing reasons, Defendant BofA's motion to dismiss is GRANTED IN PART and DENIED IN PART, and Defendant SLS's motion to dismiss is DENIED.  Specifically: (1) BofA's motion to dismiss Plaintiff's claims regarding his refinancing application, the breach-of-contract claim, and the FCRA claim are GRANTED; (2) BofA's motion to dismiss Plaintiff's GBL claim is DENIED; and (3) SLS's motion to dismiss Plaintiff's GBL and FDCPA claims are DENIED.  Plaintiff's motion for leave to file a second amended complaint is GRANTED.

Plaintiff shall file a second amended complaint that is consistent with this Opinion & Order no later than July 23, 2025.

By separate order, I will issue a referral to the designated Magistrate Judge to oversee pretrial proceedings.

The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 18, 22, and 29.

SO ORDERED.

Dated: July 2, 2025
       New York, New York

Vernon S. Broderick
United States District Judge