UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
:
HAO ZHE WANG,                                             :
:
                             Plaintiff,      :
:             23-CV-4508 (VSB)
         - against -                  :
:             **OPINION & ORDER**
BANK OF AMERICA CORPORATION,        :
*et al.*,                                                     :
:
                        Defendants.  :
:
----------------------------------------------------------X

Appearances:

Hao Zhe Wang
New York, NY
Pro se *Plaintiff*

Michael Edmund Blaine
Carol Ann DiPrinzio
Winston & Strawn LLP
New York, NY
*Counsel for Defendant Bank of America Corporation*

Lisa Ann Herbert
Alan Frederick Kaufman
Nelson Mullins Riley & Scarborough LLP
New York, NY
*Counsel for Defendant Specialized Loan Servicing LLC*

VERNON S. BRODERICK, United States District Judge:

      Before me is pro se Plaintiff's request for a preliminary injunction. (Doc. 33.) Because Plaintiff fails to establish that he is likely to suffer irreparable injury in the absence of injunctive relief, the motion for a preliminary injunction is DENIED.

I. **<u>Factual Background and Procedural History</u>**[1]

Plaintiff Hao Zhe Wang ("Plaintiff"), proceeding pro se, initiated this action on February 28, 2023 by filing a complaint against Bank of America Corporation ("BofA") in Supreme Court, New York County. (*See* Doc. 1-1.) On May 30, 2023, BofA removed the action to this Court on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1332. (*See* Doc. 1.) Plaintiff filed an amended complaint on July 28, 2023, asserting claims against Defendants BofA and Specialized Loan Servicing LLC ("SLS"). (*See* Doc. 11 ("Amended Complaint" or "Am. Compl.").) Plaintiff's Amended Complaint alleges several claims, including fraudulent misrepresentation, promissory fraud, breach of contract, and violations of New York General Business Law § 349, the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's claims largely relate to his failed attempt to refinance one of his mortgages with BofA, (Am. Compl. ¶¶ 5–18),[2] and BofA and SLS's handling of his mortgage payments, (*id*. ¶¶ 19–32), including SLS continuing to collect on Plaintiff's loan despite Plaintiff's dispute regarding SLS's billing practices and fees, (*id*. ¶¶ 3, 20–29), and Defendants' reporting of Plaintiff's loan as delinquent despite Plaintiff's dispute about the amount due, (*id*. ¶¶ 4, 25–26, 30).

On September 8, 2023, BofA filed a motion to dismiss Plaintiff's Amended Complaint, (Doc. 18), along with a supporting memorandum of law, (Doc. 18-1). On October 24, 2023, SLS

---

[1] I assume the parties' familiarity with the facts and procedural history of this action, which are set forth in my prior Opinion & Order, (Doc. 32), and recite only the background relevant to resolving the instant motion. Unless otherwise noted, I draw the factual background from Plaintiff's first amended complaint, (Doc. 11), that was pending at the time that the instant preliminary injunction motion was filed. Plaintiff filed a second amended complaint on August 20, 2025. (Doc. 55.) I assume the truth of these facts for the purposes of deciding the present motion, but I make no factual findings, and nothing in this Opinion & Order should be construed as making such findings. However, I note, in considering the motion for a preliminary injunction, I "need not accept as true the well-pleaded allegations in [p]laintiff's complaint." *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020) (internal quotation marks omitted and alteration adopted). Moreover, I need to "accept all of a plaintiff's assertions on a motion for preliminary injunction as true." *Burroughs v. Cnty. of Nassau*, No. 13-CV-6784, 2014 WL 2587580, at *8 (E.D.N.Y. June 9, 2014) (citations omitted).

[2] References to paragraph numbers in the Amended Complaint are to the document titled "Attachment to *Complaint*." (Doc. 11 at 8–13 (emphasis in original).)

2

filed a motion to dismiss, (Doc. 22), and a supporting memorandum of law, (Doc. 23). Plaintiff filed a brief in opposition to the motions on November 14, 2023. (Doc. 25). BofA filed a reply in support of its motion to dismiss on November 28, 2023. (Doc. 28.) SLS did not file a reply.

On January 19, 2025, Plaintiff filed a motion for leave to file a second amended complaint, (Doc. 29), including a proposed second amended complaint regarding events subsequent to the filing of his Amended Complaint, (Doc. 29-1). Plaintiff's motion for leave to file a second amended complaint noted that SLS advised Plaintiff that it had not received Plaintiff's monthly payment in June 2024, (Doc. 29 at 1; *see also* Doc. 29-1 ¶ 41), and "[i]n October and November [2024], . . . SLS/Newrez started to report to credit bureaus that Plaintiff's installment payment on his debt was late," (Doc. 29 at 2–3; *see also* Doc. 29-1 ¶ 50). Plaintiff stated that the delinquent reporting "dash[ed]" his "hopes of securing a mortgage to purchase an apartment." (Doc. 29 at 3; *see also* Doc. 29-1 ¶ 51.)

On July 2, 2025, I issued an Opinion & Order granting in part and denying in part BofA's motion to dismiss, denying SLS's motion to dismiss in its entirety, and granting Plaintiff leave to amend.[3] (Doc. 32.) I dismissed Plaintiff's claims for fraudulent misrepresentation, promissory fraud, breach of contract, and violations of the FCRA, (*id.* at 2, 8–11, 18–20), but I allowed claims under New York General Business Law § 349 to proceed against both BofA and SLS, as well as claims under the FDCPA against SLS, (*id.* at 2, 12–17).

Two days later, on July 4, 2025, Plaintiff filed the instant motion for preliminary injunction (1) "for BofA to promptly deliver Plaintiff's mortgage payments to Newrez" and (2) for "Newrez to withdraw all derogatory reports it has made to credit reporting agencies about Plaintiff['s loan] and to pause such reporting until the case is adjudicated." (Doc. 33 ("PI Mot.")

---

[3] Plaintiff filed a second amended complaint on August 20, 2025. (Doc. 55.)

3

at 1.)  On July 25, 2025, Defendants filed their opposition to the preliminary injunction motion. (Doc. 46 ("SLS Opp."); Doc. 47 ("BofA Opp.").)  On August 1, 2025, Plaintiff filed his reply in further support of the preliminary injunction motion along with a declaration and exhibits in support of his motion for a preliminary injunction.  (Doc. 48 ("Reply"); Doc. 48-1 (Pl.'s Decl.").)

## II. Legal Standard

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'"  *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).  To obtain a preliminary injunction, the movant "must make a clear showing that [(1)] 'he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest.'"  *Id.* at 346 (quoting *Winter*, 555 U.S. at 22).  Of these factors, irreparable harm is the most important, for if there is no finding of irreparable harm, an injunction cannot issue.  *See USA Recycling, Inc. v. Town of Babylon,* 66 F.3d 1272, 1294–95 (2d Cir. 1995) ("We have described a showing of irreparable harm as the *sine qua non* for preliminary injunctive relief." (citation omitted)).  The irreparable harm requirement "must therefore be satisfied before the other requirements for an injunction can be considered."  *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (internal quotation marks omitted).  "[A]n irreparable injury is an injury that is not remote or speculative but actual and imminent, [] for which a monetary award cannot be adequate compensation," *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (internal quotation marks omitted), and which cannot be remedied "if a court waits until the end of trial to resolve the harm," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted).

4

As this motion is brought by a pro se litigant, it should be read "to raise the strongest arguments that [it] suggest[s]." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

A movant seeking injunctive relief has a "heavier burden" than a plaintiff who must plead a "plausible claim necessary to avoid dismissal." *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020) (citation omitted). Indeed, in considering the motion for a preliminary injunction, I "need not accept as true the well-pleaded allegations in [p]laintiff's complaint." *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020) (internal quotation marks omitted and alteration adopted). Nor do I need to "accept all of a plaintiff's assertions on a motion for preliminary injunction as true." *Burroughs v. Cnty. of Nassau*, No. 13-CV-6784, 2014 WL 2587580, at *8 (E.D.N.Y. June 9, 2014) (citations omitted).

The Second Circuit has held that, for purposes of a preliminary injunction motion, "[a]n evidentiary hearing is not required when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case, or when the disputed facts are amenable to complete resolution on a paper record." *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (internal citations omitted); *see also Republic of Philippines v. N.Y. Land Co.*, 852 F.2d 33, 37 (2d Cir. 1988) (noting that oral testimony was not required on a motion for a preliminary injunction where the "most significant factors" would have "remained essentially unchanged by any additional evidence"). I find that such a hearing was not required because complete resolution of the motion before me is possible on the extensive paper record submitted by the parties.

### III. Discussion

Plaintiff's "Emergency Motion for [a] Preliminary Injunction" does not meet the standard for emergency injunctive relief because Plaintiff fails to demonstrate that he will suffer irreparable harm if an injunction is not issued. Specifically, he fails to demonstrate why the injuries he complains of are actual and imminent, and cannot be remedied by monetary damages, and provides no basis to disrupt the normal pace of this litigation.

First, Plaintiff fails to allege irreparable harm associated with BofA's failure to deliver loan payments on time and SLS's reporting of Plaintiff's loan as delinquent. The gravamen of Plaintiff's argument for irreparable harm is that Defendants' actions will cause Plaintiff to "miss out on the chance to buy [an] apartment this year." (Reply 9.) However, Plaintiff does not elaborate why he cannot buy an apartment; indeed, Plaintiff acknowledges that he "has again started to shop for a new apartment, despite his 'Good' rather than 'Excellent' FICO score." (PI Mot. 6.) Plaintiff contends that Defendants' failing to deliver mortgage payments on time and reporting of Plaintiff's loan as delinquent "gravely damaged Plaintiff's credit ratings, such that his FICO score, central to lenders' evaluation of a mortgage applicant's creditworthiness, plummeted since 2024," (*id*. at 2), he has been unable to "regain[] the 'Excellent' FICO rating that he held before, which is what he needed to secure favorable loan terms for his new home purchase," (*id*. at 5), his credit score "impact[s] . . . [his] eligibility for home loans and the terms []he gets," (Pl.'s Decl. ¶ 25), and his "co-op purchase . . . entails more credit pulls by the lender and co-op boards," (Reply 10). Plaintiff states that "[n]ot being [able] to purchase a new home . . . ha[s] burdened [him] with extreme anxiety and mental distress" and a "preliminary injunction . . . can help Plaintiff regain his feet in his financial and personal life and reduce his emotional distress." (*Id*. at 7.) Although Plaintiff states that "the harm of a ruined FICO score is not the

low score itself but the lost and denied financial opportunity that accurate credit reports and healthy FICO scores represent," (Reply 9), Plaintiff has not demonstrated that he cannot otherwise obtain a loan to purchase a home. *See Grayson v. Equifax Credit Info. Servs.*, No. 18-CV-6977, 2020 WL 13200592, at *1 (E.D.N.Y. July 24, 2020) (denying a preliminary injunction motion and finding that the plaintiff neither demonstrated a likelihood of success on the merits nor made a showing of irreparable harm where he alleged that defendants "falsely reported his credit history and filed false fraud alerts on his credit report, which has ensured that the Plaintiff will eventually become a victim of financial ruin" (internal quotation marks omitted)); *Cadet v. Equifax Credit Servs.*, No. 05-CV-4843, 2006 WL 8439286, at *2 n.2 (E.D.N.Y. Feb. 10, 2006) (denying a preliminary injunction motion and finding that the plaintiff "has not shown irreparable harm" where he alleged "that he was denied various loans and professional and business opportunities, but he provide[d] no evidence in support of these allegations"). In fact, although alleging that "the damaging credit report rendered [Plaintiff's] dream [of purchasing a new home] impossible at the moment," (PI Mot. 2), Plaintiff fails to submit evidence that he has been denied loans or offered less favorable loan terms because of his credit score. In addition, contrary to Plaintiff's claim that his ability to purchase a home has been negatively impacted by a "ruined FICO score," (Reply 9), Plaintiff states that he "ha[s] actively shopped for a new apartment since late 2024," "submitted offers for two co-ops in midtown Manhattan in the last week of June and first week of July," his offer was "accepted at one of these [co-ops] on July 11," and he is "explor[ing] financing options" "[i]n conjunction with the offers [he] made." (Pl.'s Decl. ¶¶ 20–23). Moreover, Plaintiff's credit score has increased each time his payment was credited as "current," (PI Mot. 4–5), and SLS "crediting Plaintiff's account for the June 2024 [missing] payment and [] updat[ing] the credit reporting to reflect that Plaintiff has been

7

current through the present," (SLS Opp. 8), should help Plaintiff's credit score increase. These assertions undermine Plaintiff's claim that "the damaging credit report rendered []his dream [of purchasing a new home] impossible at the moment," (PI Mot. 2), and belie any assertion of "actual and imminent" injury necessary to warrant injunctive relief. Thus, Plaintiff's alleged irreparable harm associated with the loss of an opportunity to own a home is purely speculative and supported by conclusory assertions insufficient to demonstrate irreparable harm.

Second, Plaintiff's request to order SLS to "withdraw all derogatory reports it has made to credit reporting agencies about Plaintiff and to pause such reporting until the case is adjudicated," (PI Mot. 1), fails because his claim is mooted. *See Wimberly v. Experian Info. Sols., Inc.*, No. 18-CV-6058, 2019 WL 6895751, at *10 (S.D.N.Y. Dec. 18, 2019) (holding that the plaintiff's claim for injunctive relief to enjoin the defendant from reporting the plaintiff's delinquent account was mooted because the defendant purged negative information from the original delinquency date). SLS explained that Plaintiff's loan has consistently been reported as delinquent because "there was no monthly payment made for the June 1, 2024 installment of Plaintiff's loan," resulting in each monthly installment being applied to the prior month and Plaintiff being "off schedule by one month" since June 2024. (SLS Opp. 7–8.) Pursuant to SLS's "standard business practices to negatively report loans that are delinquent for 30 or more days, [Plaintiff's] loan reported as current in months with 30 days or less, and reported as delinquent in months with 31 days, such that the loan was reported as one-month delinquent for October 2024, December 2024, January 2025, March 2025 and May 2025, but was reported as current for November 2024, February 2025 and April 2025." (*Id*. at 8.) Since Plaintiff has "timely paid his monthly loan installments from July 2024 through the present, and to resolve" the instant preliminary injunction motion, SLS stated that it would "credit[] Plaintiff's account

8

for the June 2024 [missing] payment and [] update the credit reporting to reflect that Plaintiff has been current through the present." (*Id.*)  In a letter dated August 29, 2025, SLS confirmed that it "(i) credited Plaintiff's account for the June 2024 missing payment, and (ii) updated the credit reporting to reflect that Plaintiff's payments have been current through the present." (Doc. 59.) Thus, even if Plaintiff's loan payments were reported as delinquent when Plaintiff initially brought his preliminary injunction motion, the delinquency will "no longer [be] on Plaintiff's report and there is therefore no conduct to enjoin." *Wimberly*, 2019 WL 6895751, at *10. "Plaintiff[] can no longer receive effectual relief from this Court because [he] ha[s] already received the relief sought." *Clementine Co. LLC. v. Adams*, No. 21-CV-7779, 2022 WL 4096162, at *2 (S.D.N.Y. Sept. 7, 2022), *aff'd sub nom*. *Clementine Co., LLC v. Adams*, 74 F.4th 77 (2d Cir. 2023).  Accordingly, his claim seeking injunctive relief related to alleged derogatory reports is moot.  *See id.*; *see also Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393 (2d Cir. 2022) ("Put simply, the Court cannot enjoin what no longer exists."); *Associated Gen. Contractors of Conn. v. City of New Haven*, 41 F.3d 62, 66–67 (2d Cir. 1994) (explaining that a case is moot when "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" (internal quotation marks omitted)).  Moreover, Plaintiff has made no showing as to how he might still be affected by SLS's alleged violation now that the delinquent reporting has ceased and any harm stemming from the delinquent reporting is not reasonably expected to recur.

Third, even if Plaintiff's claim was not mooted, Plaintiff fails to establish how money damages would be inadequate.  Irreparable harm is defined as "injury for which a monetary award cannot be adequate compensation."  *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596

9

F.2d 70, 72 (2d Cir. 1979). Although Plaintiff may not be able to "secure favorable loan terms," (PI Mot. 5), because of the prior delinquent reports, or he may "incur[] enormous costs" by having to "place his parent in a care facility" because he is unable to buy a bigger apartment, (Reply 9), "[d]oing so would result in a financial loss potentially recoverable as monetary damages but would not pose a likely threat of irreparable harm," *Dolce v. Certified Luxury Motors*, No. 25-CV-2150, 2025 WL 1198833, at *4 (S.D.N.Y. Apr. 11, 2025), *report and recommendation adopted*, 2025 WL 1184076 (S.D.N.Y. Apr. 23, 2025). I find that monetary damages would therefore be sufficient, and thus there is no irreparable harm, supporting my denial of emergency injunctive relief. *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm."); *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 918 (2d Cir. 1986) ("[W]here money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law.").

Finally, Plaintiff's unexplained delay in seeking a preliminary injunction is also fatal to his claim of irreparable harm and, as a result, to his motion. *See CCM Touring LLC v. Moonbug Ent. Ltd.*, No. 23-CV-7116, 2025 WL 945853, at *3 (S.D.N.Y. Mar. 28, 2025) (finding that the "substantial delay" in filing the motion for a preliminary injunction "militates against finding irreparable harm and granting the motion for an injunction"). Unexplained delay—"either in bringing suit or in moving for preliminary injunctive relief"—"may justify denial of a preliminary injunction." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (internal quotation marks omitted). That is because the "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that

there is, in fact, no irreparable injury." *Id.* (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985)). Such is the case here. Plaintiff waited until two days after I issued the Opinion & Order granting in part and denying in part Defendants' motions to dismiss before filing the instant motion for a preliminary injunction— one year after Plaintiff began "actively shopp[ing] for a new apartment" in late 2024, (Pl.'s Decl. ¶ 20), six months after Plaintiff filed a motion for leave to file a second amended complaint which includes the facts alleged in Plaintiff's motion for a preliminary injunction, (*see* Doc. 29), and nine months after SLS began reporting Plaintiff's loan as delinquent in October 2024, (SLS Opp. 8). "[T]he length of delay is measured from the time the plaintiff originally learned of the alleged violation or is put on notice thereof . . . not when the irreparable injury allegedly begins." *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 301 (S.D.N.Y. 2021) (citing *Tough Traveler*, 60 F.3d at 968). Thus, Plaintiff's delay in seeking a preliminary injunction, for which he provides no explanation, "suggests that there is, in fact, no irreparable injury." *Citibank*, 756 F.2d at 277 (internal quotation marks omitted).

      For these reasons, I find that Plaintiff failed to sufficiently demonstrate irreparable harm in support of his motion for a preliminary injunction. Because Plaintiff fails to establish irreparable harm, which "must . . . be satisfied before the other requirements for an injunction can be considered," *St. Joseph's*, 131 F.4th at 106 (internal quotation marks omitted), I need not and do not consider the other requirements for a preliminary injunction. *See Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (per curiam) ("In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied"); *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019) ("Thus, if a party fails to show irreparable harm, a court need not [] address the remaining elements."); *Procter &*

11

*Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 344 (S.D.N.Y. 2008) ("A moving party must demonstrate that irreparable injury. . . is likely before any other requirement for the issuance of an injunction may be considered.").

### IV. Conclusion

For the reasons stated above, Plaintiff's motion for preliminary injunction, (Doc. 33), is DENIED.

The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 33.

SO ORDERED.

Dated: September 10, 2025
      New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge